LARRY D. BARNETTE AND KATHLEEN C. BARNETTE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Barnette v. Commissioner
Docket Nos. 16906-82, 535-85, 29224-85, 3282-88, 3285-88, 11682-88, 22809-82, 620-85, 355-88, 3283-88, 11681-88, 17821-88
United States Tax Court
T.C. Memo 1992-595; 1992 Tax Ct. Memo LEXIS 615; 64 T.C.M. (CCH) 998; October 5, 1992, Filed *615 For Larry D. Barnette, Allied Management Corp., Janet L. Barnette, and Leo David Barnette, Petitioners: John Harllee, Jr. For Kathleen C. Barnette, Petitioner: Trevor W. Swett III, Richard E. Timbie, and Jill R. Shellow, For Respondent: John F. Dean, Bobby D. Burns, and Eli J. Dicker. KORNER
KORNER
SUPPLEMENTAL MEMORANDUM OPINION KORNER, Judge: The instant consolidated cases were tried at a Special Session of the Court sitting in Jacksonville, Florida, in April of 1991. The trial consumed about a week, and the record amassed was large. After trial, and after extensive briefing, the Court rendered its Opinion herein at the end of June 1992, T.C. Memo. 1992-371. In its Opinion, the Court identified and disposed of 15 different issues. In the process of doing this, the Court, inter alia, held that certain admissions obtained by one of the parties against the other, and subsequent stipulations by the parties to the same effect, were stipulations and agreements as to the law and not as to the facts, were improper, and would not be followed by the Court. The Court went on to find and hold that JETS Wascherei GmbH (JETS Wascherei) was a German corporation *616 wholly owned by Job Employment Temporary Services, Inc. (J.E.T.S.), [2] a U.S. corporation, but was a separate viable entity in its own right, recognizable as an entity for Federal tax purposes; that certain German laundry contracts were the property of J.E.T.S. (as respondent contended), but that JETS Wascherei performed the contracts in Germany, received the proceeds (as the parties stipulated), and was the owner of the income. Further, the Court held that the sale of JETS Wascherei to Old Dominion Corp., S.A. (Old Dominion), a Panamanian corporation, was a valid sale and should be respected. Thus, upon the facts presented (many of them stipulated), the Court concluded that the JETS Wascherei income was not taxable to Allied Management Corp. (Allied), as contended by respondent, was not a constructive dividend to petitioner Barnette, as owner of Allied, but was taxable as foreign personal holding company income to Old Dominion for 1977, 1978, and 1979. The Court further held that said foreign personal holding company income of Old Dominion for the years 1983, 1984, and 1985 should be taxed as follows: (a) To Jets Services, Inc. (Jets Services), as owner of the preferred stock *617 of Old Dominion in 1983 and 1984; and (b) to the owners of the common stock, as subpart F income, for the year 1985, that is, to petitioner Mrs. Barnette, and petitioners Janet and Leo Barnette. Petitioners have now filed a motion under Rule 161[3] asking that the Court reconsider two aspects of its Opinion in T.C. Memo. 1992-371. At bottom, petitioners' complaints are essentially two: (a) The court improperly refused to recognize the admission and the stipulation of the parties that JETS Wascherei was only a branch of its U.S. parent Allied, and was not recognizable as a separate taxable entity for U.S. tax purposes; and (b) as the result of ignoring the parties' admission and stipulation, the Court decided that Old Dominion had foreign personal holding company income for most of the years in question, taxable in a certain way, which involved deciding a new issue which had not been raised *618 by the parties, was prejudicial to petitioners, and should not be considered herein. Petitioners then reiterate essentially the same arguments as were advanced by them on brief after the trial of the case herein. Respondent has filed what she denominates a "Notice of Objection" to petitioners' motions for reconsideration. In fact, said response was not really an objection at all to petitioners' principal point in their motion: that the Court should recognize and honor the stipulation and admission of the parties that JETS Wascherei was only a branch of its U.S. parent Allied and was not entitled to recognition as a separate entity for U.S. tax purposes, with all the results flowing from that. Instead, the response seems to adopt sub silentio petitioners' threshold premise -- that the admissions and stipulations of *619 the parties on this subject should be accepted by the Court -- and then goes on to advance essentially the same arguments as respondent advanced on brief after trial herein, as to the way the income in dispute here should be treated. The granting of a motion for reconsideration under Rule 161 rests within the discretion of the Court. Leuhsler v. Commissioner, 963 F.2d 907, 911 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Louisville & N. R. Co. v. Commissioner, 641 F.2d 435, 443-444 (6th Cir. 1981), affg. on this issue 66 T.C. 962 (1976); Estate of Halas v. Commissioner, 94 T.C. 570, 574 (1990); Vaughn v. Commissioner, 87 T.C. 164, 166 (1986). The Court generally denies such a motion unless unusual circumstances or substantial error is shown. Estate of Halas v. Commissioner, supra; Vaughn v. Commissioner, supra at 167; Estate of Bailly v. Commissioner, 81 T.C. 949, 951 (1983); Haft Trust v. Commissioner, 62 T.C. 145, 147 (1974), *620 affd. on this issue 510 F.2d 43, 45 n.1 (1st Cir. 1975). It is the policy of this Court to try all the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation. Markwardt v. Commissioner, 64 T.C. 989, 998 (1975), and cases there cited; see Standard Knitting Mills v. Commissioner, 141 F.2d 195, 198-199 (6th Cir. 1944), affg. 47 B.T.A. 295 (1942); cf. Naftel v. Commissioner, 85 T.C. 527, 535 (1985). A review of the portions of the request for admissions by petitioners, as pertinent herein, respondent's response thereto, and portions of the stipulations of fact which bear on petitioners' complaint herein, may help to clarify the conclusions which the Court has reached. In response to petitioners' request for admissions, respondent admitted that JETS Wascherei was organized in West Germany in 1976 as a GmbH (Gesellschaft mit beschrankter Haftung). The parties later stipulated the same fact, and further stipulated that JETS Wascherei itself kept all the necessary books of account, business records, and bank *621 accounts for the period in question. The parties further stipulated that JETS Wascherei earned the income from laundry services which it performed for 1977 through 1981, and that payment therefor from April 1977 onwards until the termination of the contract was made by the Army to JETS Wascherei and deposited in JETS Wascherei's bank accounts. Finally, the parties stipulated that the "quotas" (i.e., stock) of JETS Wascherei were transferred from its then owner J.E.T.S. to Old Dominion and that Barnette personally acquired ownership of Old Dominion in March 1977. All the above were perfectly legitimate stipulations of fact, supported by other evidence of record, which the Court has accepted and applied in resolving the present case. In addition, however, respondent admitted, in response to petitioners' request for admissions, that JETS Wascherei was not a corporation or association within section 7701(a)(3), and for U.S. tax purposes should be treated as a branch of the person who owned it. Respondent further admitted that Old Dominion received an amount of foreign based company sales income for the years 1977, 1978, and 1979, which respondent admitted was not taxable to Barnette *622 under section 951. The parties then stipulated that JETS Wascherei was not operated as a corporation or association under U.S. law and should be treated for U.S. tax purposes as a branch. This latter stipulation was rejected by the Court as a stipulation or agreement of the parties as to the law, and the Court went forward to resolve the case on the stipulations of fact and other evidence which was in the record, applying the law as the facts indicated the law should be applied. As the Opinion discloses in more detail, this resulted in the JETS Wascherei income being classed as income of a different type and taxable in a somewhat different direction from that which was contended for by the parties. Thus, the Court held that Old Dominion, as owner of JETS Wascherei, and as a Panamanian corporation owned by petitioner Barnette, had foreign personal holding company income for 1977, 1978, and 1979 which was taxable to Barnette, but not to him for 1980. Further, the Court held that the Old Dominion foreign personal holding company income for 1983, 1984, and 1985 should be taxed as follows: (a) To Jets Services as owner of the preferred stock of Old Dominion in 1983 and 1984; and (b) *623 to the owners of the common stock of Old Dominion, as subpart F income, in 1985, viz., to petitioners Mrs. Barnette, Janet Barnette, and Leo Barnette. These results, as the Opinion shows, were arrived at by the Court after finding the facts which were established by the evidence of record, including pertinent and relevant stipulations of the parties, and applying the law to those facts, contrary to what the parties had apparently agreed to. The efficacy of such agreements is what concerns us here. I. As To the Parties' Agreements and Admissions
Petitioners' argument is based on a long exposition with regard to rule 36 of the Federal Rules of Civil Procedure, upon which our Rule 90, regarding admissions, is concededly based. Petitioners concede that the Federal Rules of Civil Procedure do not contain provisions which are comparable to the Rules of this Court regarding stipulations. See Rule 91. We start our discussion by noting that the Federal Rules of Civil Procedure do not apply in this Court. Licavoli v. Commissioner, 252 F.2d 268 (6th Cir. 1958), affg. T.C. Memo. 1956-187. Nevertheless, this Court recognizes *624 that in many respects the Federal Rules of Civil Procedure and the Rules of this Court are similar, that in some cases the Tax Court's Rules may be derivative from the Federal Rules of Civil Procedure, and that in appropriate cases, and in the absence of a clear rule in this Court, we may look to the Federal Rules of Civil Procedure and interpretations thereof if they can be of assistance in resolving problems before us. See Rule 1(a). In Estate of Allensworth v. Commissioner, 66 T.C. 33 (1976), it was pointed out that our Rule 90(a) is based upon rule 36 of the Federal Rules of Civil Procedure, as amended, which broadened the scope of requested admissions to include such matters as are "set forth in the request that relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents * * *." The provisions of Rule 90(a) are essentially the same. This language does not mean, however, that the parties, by the use of Rule 90, can remove an issue from the Court's consideration by admitting what the law is, thereby preempting the function of the Court. The history of the amendments to rule 36 of the *625 Federal Rules of Civil Procedure, and from this, the history of Rule 90, shows that such amendment made a significant change in the scope of that rule. The amendment makes clear that requests for admission are not confined to matters of 'fact' but may also include a contention of a party or a party's opinion of fact or law. * * * [Estate of Allensworth v. Commissioner, supra; emphasis added.] This means that the admissions rule has been broadened to enable one party to determine what the other party's position is on a given issue, including the stance which the party takes as to the correct interpretation of the law. This may be of help in narrowing the issues and aiding a meaningful trial preparation, making it clearer to one party what he may have to meet from the other side, see and compare Owens-Illinois, Inc. v. Commissioner, 76 T.C. 493 (1981), but it does not give the parties the right to determine what the law of the case shall be, thus preempting the Court from exercising that right. The facts may belong to the parties, but the law belongs to the Court. There is no support, then, for the proposition *626 that the parties, by "admissions" under Rule 90, can finally determine what the law of the case shall be in this Court. It is even more clear in this Court that stipulations are both acceptable and encouraged with respect to facts, but not as to matters of law. Rule 91. Where the parties have stipulated that a certain Code section applies to a particular situation, this is a stipulation of law and may be ignored. Godlewski v. Commissioner, 90 T.C. 200, 203 n.5 (1988). As the Court of Appeals said in Saviano v. Commissioner, 765 F.2d 643, 645 (7th Cir. 1985), affg. 80 T.C. 955 (1983): The parties to a lawsuit are free to stipulate to factual matters. However the parties may not stipulate to the legal conclusions to be reached by the court * * * Thus, while the parties are free to stipulate to the factual elements of the transactions, the Court is not bound by the legal conclusions implied by the terminology utilized. To the same effect, see King v. United States, 641 F.2d 253 (5th Cir. 1981); Mead's Bakery, Inc. v. Commissioner, 364 F.2d 101 (5th Cir. 1966), *627 affg. on this issue but revg. on another issue T.C. Memo. 1964-104. See also Sivils v. Commissioner, 86 T.C. 79, 82 (1986). The approach which we take here is not new, but one of long standing in this tribunal. In disregarding a stipulation as to the deductibility of an item, the Board of Tax Appeals said, in Ohio Cloverleaf Dairy Co. v. Commissioner, 8 B.T.A. 1249, 1256 (1927), affd. 34 F.2d 1022 (6th Cir. 1929): it is a conclusion of law. As such it is either an agreement which entirely removes the question from the proceeding, or else it is an attempt to limit the function of the Board to decide the issue of liability. In either aspect, it is ineffective. * * * In this matter, there is no difference between this and other courts. Cf. Estate of Sanford v. Commissioner, 308 U.S. 39 (1939); Los Angeles Shipbuilding & Drydock Corp. v. United States, 289 F.2d 222 (9th Cir. 1961); First National Bank & Trust Co. of Tulsa v. Jones, 61 F. Supp. 364 (W.D. Okla. 1945). Finally, *628 our description given above of the admission and stipulations in this case shows that the agreement as to facts which took place here was entirely consistent with the Court's finding that JETS Wascherei was a separate viable entity to be recognized for Federal tax purposes. There was no stipulation of facts which would lead to a contrary conclusion, only the stipulation and admission of the parties that JETS Wascherei was not a corporation or association within the meaning of the Internal Revenue Code, which was nothing more than a stipulation as to the legal conclusion to be applied in this case, and is to be ignored as being contrary to the whole weight of the evidence which we have here. See Fed. R. Civ. P. 36 advisory committee's note, 48 F.R.D. 530, 532 ("The amended provision does not authorize requests for admissions of law unrelated to the facts of the case.") II. As To Deciding an Issue Not Raised by the Parties
The other significant part of petitioners' motion herein is the argument that the Court decided an issue which the parties did not raise, and that to do so was improper and indeed worked a prejudice upon petitioners. *629 The basis of this complaint is that the Court, having recognized that JETS Wascherei was a viable separate entity within the meaning of the Internal Revenue Code, contrary to the parties' stipulation, then went forward and determined how the JETS Wascherei income should be taxed, which resulted in sustaining respondent's determination of deficiency with regard to petitioner Barnette as to certain years (albeit perhaps on somewhat different grounds), but not as to other years. For the years 1977, 1978, and 1979, the basis for upholding respondent's determination was that the JETS Wascherei income was attributable to Old Dominion, owner of all its stock, as foreign personal holding company income, and taxable to petitioner Barnette as owner of all Old Dominion's stock. This was indeed a theory different from that which was announced in respondent's statutory notice, and different from that which the parties had pled and argued. Nevertheless, on the facts in this record the Court determined that the law required the result which was stated in the Opinion. We must start with the recognition that the underlying and fundamental issue in this case is the correctness or error of respondent's *630 determination of deficiency. Secs. 6212, 6213, and 6214. As we said in Estate of Finder v. Commissioner, 37 T.C. 411, 423 (1961), the reasons given in the notice of deficiency do not constitute the issues in the case and the presumption of correctness of respondent's determination is not destroyed by the reasons given, even though they be unsound or badly expressed. As we also said many years ago in Carnrick v. Commissioner, 21 B.T.A. 12, 21 (1930): It is not the Commissioner's method of determination or computation which is the substance of the proceeding, for the deficiency may be correct despite a weakness in arriving at it or explaining it. * * * "It is immaterial whether the Commissioner proceeded upon the wrong theory in determining deficiencies. In any event the burden was on petitioner to show that the assessment was wrong." Altschul Tobacco Co. v. Commissioner, 42 Fed. (2d) 609. See also Gossett v. Commissioner, 22 B.T.A. 1279 (1931), affd. on other grounds 59 F.2d 365 (4th Cir. 1932). Where the decision of an issue *631 is necessary for the decision of the case, and where the record contains sufficient facts to permit it, the Court will do so, whether the parties have pleaded it or not. Park Place, Inc. v. Commissioner, 57 T.C. 767, 768-769 (1972); see further, Concord Consumers Housing Cooperative v. Commissioner, 89 T.C. 105, 126 (1987)(Korner, J., concurring). In the earlier case of Ohio Cloverleaf Dairy Co. v. Commissioner, cited above as 8 B.T.A. 1249 (1927), the Board of Tax Appeals, having disregarded the stipulation of the law involved, proceeded to decide the case on the record presented, as we have done here. The taxpayer complained, arguing, as reported by the Board at 9 B.T.A. 433, 434 (1927): this Board was in error in deciding this case against petitioner and instead of so doing, this Board should have pointed out the deficiency of the stipulation of facts and should have required or permitted an amendment of the stipulation, or should have required or permitted an amendment of the petition or answer and the submission of additional or supplemental proofs. To *632 this the Board replied: This goes beyond the function of the Board. The Board must assume that the parties represented by their counsel have presented the case intelligently according to their best interests, and except in a clear case of injustice or under extraordinary circumstances, the Board takes the record as it finds it and decides the issues in accordance therewith. The function of the Board is primarily judicial and not inquisitorial. It is only in this way that the Board can discharge the burden of deciding the many cases before it. Its task could not be effectively accomplished if it were to seek out in each case facts which the parties may have omitted from the record without knowing until after the decision whether such omission was deliberate or inadvertent. The Board in the present case gave full and careful consideration to the record submitted in an earnest effort to decide the controversy as the parties presented it and it cannot now open the record and prolong the proceeding after full opportunity to be heard has been given. [Id.] Thus, the parties cannot prevent the Court from deciding the case upon what it considers to be the correct basis, simply *633 by failing to plead correctly, or by attempting to control the issues to be considered by the Court through admission and/or stipulation. It is the Court's right and obligation to decide the case upon what it considers to be the correct application of the law, based upon the record presented, whether the parties have properly pleaded the controlling issues or not. In a given case, where the record presents the Court with a situation where it appears that the matter perhaps should be decided upon a basis different from that which has been pled and argued by the parties, three alternatives are open to the Court: (a) If the Court perceives the facts in the record to be inadequate to enable the Court to decide the issue which the Court feels is or should be controlling, the Court can reopen the record for further trial and taking of evidence. (b) If the Court concludes that sufficient facts are present, but that a further exposition on the applicable law by the parties is desirable, the Court can call for further briefing. (c) However, if the Court feels that a full and fair opportunity to present the facts has been given, and the Court feels that no further briefing on the law is *634 necessary, the Court can go forward and decide the case on the record presented. The latter of these three choices was the one which the Court followed here, concluding that the facts were adequately presented, and that there was no confusion on the law which required further briefing. No element of surprise can be argued. As the Court pointed out in its Opinion, petitioners recognized that if the Court held (as it did) that JETS Wascherei was a separate corporation, foreign personal holding income would then be present. As petitioners stated in their brief herein: If JETS Wascherei were considered a separate corporation for U.S. income tax purposes, then the monies [sic] Old Dominion Corp. S.A. received from it would constitute dividends. As such they would be foreign personal holding company income. But the parties have stipulated that JETS Wascherei is not considered a separate corporation. Thus, petitioners recognized that the question was present, but they chose to ignore it and follow another line of argument. They are in no position to claim surprise or prejudice here, for they should have taken into account that this Court long has possessed authority to disregard *635 stipulations of law. Where the Board ignored a stipulation of law which would have been dispositive, and took evidence on the subject, so as to decide the case on the merits (not in accordance with the stipulation), no substantive right of the taxpayer was violated. Lewis v. Commissioner, 47 F.2d 32 (3d Cir. 1931), affg. Marquissee v. Commissioner, 11 B.T.A. 334 (1928). That is our opinion here. It follows that petitioners' motions for reconsideration should be denied, and An appropriate order will be issued. Footnotes
1. Cases of the following petitioners are consolidated herewith: Allied Management Corp., docket No. 22809-82; Larry D. Barnette and Kathleen C. Barnette, docket No. 535-85; Allied Management Corp., docket No. 620-85; Allied Management Corp., docket No. 29224-85; Larry D. Barnette and Kathleen C. Barnette, docket No. 355-88; Larry D. Barnette, docket No. 3282-88; Larry D. Barnette, docket No. 3283-88; Allied Management Corp., docket No. 3285-88; Janet L. Barnette, docket No. 11681-88; Leo David Barnette, docket No. 11682-88; and Kathleen C. Barnette, docket No. 17821-88.↩
2. J.E.T.S. in turn was a wholly owned subsidiary of Allied Management Corp., also a U.S. corporation.↩
3. All Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted, and all statutory references are to the Internal Revenue Code in effect for the years in issue.↩